Roger A. Colvin, Esq. (SBN 068773)
Vincent C. Ewing, Esq. (SBN 177708)
Alvarez-Glasman & Colvin
Attorneys at Law
13181 Crossroads Parkway North
Suite 400 – West Tower
City of Industry, CA  91746
Telephone: (562) 699-5500
Facsimile:  (562) 692-2244
rcolvin@agclawfirm.com

Attorneys for Defendants, City of Chico,
Jeremy Gagnebin, Alex Fliehr, and Jared Cumber

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PHILLIPS, individually and as a co-successor-in-interest to Decedent DESMOND PHILLIPS; DELPHINE NORMAN, individually and as a co-successor-in-interest to Decedent DESMOND PHILLIPS; CHADRICK INGRAM, individually; K.T. by and through his Guardian Ad Litem LATISHA WILLIAMS,<br><br>                    Plaintiffs,<br><br>     v.<br><br>CITY OF CHICO, a municipal corporation; JEREMY GAGNEBIN, individually and in his capacity as an officer for the Chico Police Department; ALEX FLIEHR, individually and in his capacity as an officer for the Chico Police Department; JARED CUMBER, individually and in his capacity as an officer for the Chico Police Department; and DOES 1-50, inclusive, individually and in their official capacities as police officers for the CITY OF CHICO Police Department,<br><br>                    Defendants. | Case No.:  2:18-cv-00153-JAM-DMC<br><br>(*Assigned to the Honorable District Court Judge John A. Mendez*)<br><br>DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>DATE:        July 30, 2019<br>TIME:        1:30 p.m.<br>CTRM:       6 |

1

TO THE HONORABLE COURT, PLAINTIFFS AND TO THEIR ATTORNEYS OF RECORD:

Defendants CITY OF CHICO, JEREMY GAGNEBIN, ALEX FLIEHR and JARED CUMBER (collectively, the "Chico Defendants") hereby submit the following Reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, or, in the alternative, Partial Summary Judgment.

Dated:  July 23, 2019                           ALVAREZ-GLASMAN & COLVIN


/s/ Roger A. Colvin, Esquire
Roger A. Colvin
Attorneys for Defendants
City of Chico, Jeremy Gagnebin, Alex Fliehr, and Jared Cumber

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. USE OF FORCE CLAIM:

In Plaintiffs' analysis of whether the use of force was objectively reasonable under the *Graham* standard, Plaintiffs initially addressed whether the officers considered Desmond Phillip's ("Desmond") mental illness in their approach to him. Plaintiffs claim that the evidence surrounding this issue creates a material fact question. (Opposition,13:12-13).

Contrary to this assertion, the undisputed evidence is that upon arrival at the scene, Officer Cumber ("Cumber") spoke to fire personnel who informed him that there was a possible seizure disorder involving Desmond and that Desmond had become combative, causing fire personnel to leave the apartment. (UF#4) Additionally, Officer Gagnebin ("Gagnebin") had information that the service call was a probable 5150 involving Desmond. (UF#6)  These officers were aware from the outset that mental illness was a possible issue. (UF#4).  Additionally, it is undisputed Officers Cumber, Gagnebin and Fliehr had received a 911 dispatch call informing them that Desmond was trying to kick in a door to a bedroom and was trying to stab his father. (UF#9).

The undisputed evidence is that after having this information, Gagnebin, prior to entering the apartment, spoke to Desmond telling him that he and the other officers were Chico Police and that they were not there to hurt him but to get help. (UF#19).  The evidence is also undisputed that Gagnebin repeated these statements to Desmond more than ten (10) times. (UF#20).  It is further undisputed that Gagnebin called Desmond by his first name to attempt to get Desmond to talk to him. (UF#21).  The evidence is clear and undisputed that these officers did take into consideration Desmond's mental state in their approach to him prior to either entering the apartment and prior to using deadly force.

Plaintiffs next assert that a material fact exists as to whether Desmond posed an immediate threat to the Defendants or others.  (Opposition, 13:27-28; 14:1-5).



3

1  Plaintiffs assert that it is undisputed upon forced entry into the Phillips' home, any
2  threat to the occupants of the home had been abated, yet Plaintiffs fail to provide
3  undisputed facts or evidence that supports this generalized conclusion.  What is
4  undisputed, however, is that before forced entry, Cumber, Gagnebin and Fliehr had
5  information from 911 dispatch that Desmond was actively attempting to attack his
6  father inside a bedroom somewhere in the apartment, and that Desmond was
7  attempting to stab his father, "Now."  (UF##7, 8, 9, 10).  The Fourth Amendment
8  standard is reasonableness, and it was reasonable for these officers, based upon this
9  information alone to move quickly if delay "would gravely endanger their lives or
10 the lives of others."  *Warden Md. Penitentiary v. Hayden*, 387 U.S. 294, 298-299
11 (1967).

12         Plaintiffs also assert (1) the alleged failure to take Desmond into custody by
13 less intrusive means, and (2) the officers failed to de-escalate the situation.  Besides
14 the aforementioned communications by Gagnebin to seek help for Desmond, which
15 was ignored, it is undisputed that Fliehr saw Desmond inside the apartment holding
16 two large kitchen knives, one in each hand.  (UF#24).  It is also undisputed that
17 after receiving numerous requests by Gagnebin to help him, Desmond summarily
18 closed the front door shut, leaving the officers outside the apartment, unknowing
19 whether Desmond would carry out his threats to stab his father or the children
20 inside.  (UF#25).  It is further undisputed that after the front door was shut by
21 Desmond, and before entry into the apartment, Fliehr had received information
22 from Officer Martin that there was a verbal altercation going on inside the
23 apartment. (UF#27).  Simply put, the evidence is undisputed that Desmond did not
24 provide the officers the luxury of additional time to use less intrusive means or
25 tactics of further de-escalation.  As Plaintiffs aptly cited in *Smith v. City of Hemet*,
26 394 F.3d 701 (9th Circuit), the "availability of alternative methods of capturing or
27 subduing a suspect may be a factor to consider when viewing the possibility of less
28 intrusive means."  The problem here is that Desmond and the exigent circumstances

he created, did not provide these officers with any time to develop less alternative means to take him into custody.

## II. TATICAL PLAN AND EXPERT OPINION:

Plaintiffs also assert that the officers failed to properly develop a tactical plan and failed to include a previous, unrelated incident involving Desmond into their plan. (Opposition, 9:14-19).

It is undisputed that Gagnebin, Cumber and Fliehr devised a tactical plan of entering the apartment. (UF#30). Cumber told Gagnebin and Fliehr that once Desmond presented himself to be a good target, Cumber would attempt to tase Desmond before the officers did anything else. (UF#31). It is undisputed that the tactical plan was to incapacitate Desmond temporarily so that he could be detained and handcuffed. (UF#33). Clearly, the evidence is undisputed, a tactical plan was in place before entry.

Plaintiffs' expert Roger Clark opined that the tactical plan was a failure because the officers had failed to communicate that they had previously placed Desmond on a 5150 hold, and did not collectively ascertain that Desmond was mentally impaired. (Opposition, 9:14-19).

Clark's opinions are specious based upon the exigency of the circumstances and the immediacy of action. The fact that Desmond had mental illness issues from knowledge of an unrelated previous case did not preclude the officers from forcing entry into the apartment. It is undisputed that Desmond was armed with a weapon, had threatened fire personnel, was acting irrational, ignored repeated requests for assistance, threatened to stab his father, and was in a small apartment with grandchildren hiding out in a locked bedroom with the door shut. Clark's conclusory, unsupported statement that "there was sufficient time to develop a plan" is simply not supported by the evidence. There was no time for the officers to discuss previous personal contacts regarding Desmond, especially in light of their knowledge that Desmond had threatened to stab his father and their knowledge that

5

Desmond's father also threatened to shoot Desmond. (UF#8). Plaintiffs claim that the plan was a failure and somehow ill-conceived is not supported by the evidence.

Importantly, Plaintiffs admit and concede that Plaintiffs "do not take issue with Defendant Officers' entry into the apartment or initial deployment of Taser." (Opposition, 21. Note 1, 27-28). This seems incongruent with Plaintiffs' argument that the tactical conduct was one element to establish that the use of force was unreasonable.

## III. THE UNDISPUTED MATERIAL FACTS DO NOT SUPPORT A FOURTEENTH AMENDMENT CLAIM:

Plaintiffs mistakenly and unexplainably state that Defendants have asserted that the Fourteenth Amendment claim fails because there is no evidence of the officers' "ulterior motive." (Opposition, 19:3-4). This is simply untrue and not the case.

Plaintiffs' Fourteenth Amendment claim should be dismissed because Plaintiffs have failed to offer any evidence to support the showing that Officers Cumber, Gagnebin and Fliehr intentionally acted with a purpose unrelated to legitimate law enforcement objectives. Where a law enforcement officer makes a snap judgment in an escalating situation, as was the case here when Desmond slammed the door shut, "h[er] conduct may only be found to shock the conscious if [s]he acts with a purpose to harm unrelated to legitimate law enforcement objective." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).

Plaintiffs have failed to provide any supporting evidence or undisputed material facts to establish that the Defendant officers acted with a purpose to harm Desmond unrelated to a legitimate law enforcement objective. Instead, Plaintiffs merely assert that Defendants knew Desmond suffered from a mental illness, and failed to devise an appropriate tactical plan and "panic – shot" Desmond. (Opposition, 19:14-16).

Plaintiffs also state that "it is arguable that the shooting officers would have

refrained had Defendant Cumber simply communicated that he was redeploying his taser." (Opposition, 19:17-19). Clearly, Plaintiffs have stated a speculative, unsupported conclusion in order to bootstrap their argument that the shooting officers acted with an intent to harm Desmond. What "arguably" could have occurred is pure speculation and does not satisfy the shock the conscious test delineated in *Wilkinson, supra*. As such, Plaintiffs' Fourteenth Amendment fails as a matter of law and should be dismissed.

### IV. <u>QUALIFIED IMMUNITY APPLIES:</u>

Plaintiffs assert that material fact questions exist to preclude summary judgment on the basis of qualified immunity. (Opposition, 11:8-11)

In support of this assertion, Plaintiffs (1) offer the testimony of Sgt. Lefkowitz who testified that he saw Desmond stand up after being tased and was moving in a jerky chicken-dance type manner as if the Taser was still active. (Opposition, 5:3-5), and (2) Sgt. Williams who saw the same jerking movements and then pop up. (Opposition, 14:12-13).

In offering the above testimony, Plaintiffs state, "The Sergeants observations belies all of Defendant officers' testimony that Desmond was directly charging and/or sprinting toward the shooting officers or doing anything other than being under the influence of the Taser." (Opposition, 14:13-16).

The observations of Lefkowitz and Williams about seeing Desmond's reaction to Taser does not negate anything as to the movement of Desmond after reacting to the Taser and rushing directly toward Fliehr and Gagnebin. In fact, Plaintiffs fail to provide any evidence or testimony from either Lefkowitz or Williams that they saw or didn't see Desmond's movements towards Officers Fliehr and Gagnebin after being tased. To the contrary, Lefkowitz testified that what he witnessed concerning the Taser effects upon Desmond occurred when he was outside the apartment, "back of the stack after the Taser deployment." (Plaintiffs' Exhibit "E," 23:1-6). More to the point, Lefkowitz wasn't even in the apartment

7

when the shooting occurred. (Plaintiffs' Exhibit "E," 23:19-21). Moreover, Lefkowitz testified that he did see an elongated object that had a metal reflective piece on it in Desmond's hand after the Taser deployment. (Plaintiffs' Exhibit "E," 22:16-25; 23:1-6) This is consistent with Gagnebin's description of the weapon used by Desmond when advancing toward Gagnebin.

As to Sgt. Williams, he testified that he didn't even know which officer shot at Desmond and immediately after the shooting. (Plaintiffs' Exhibit "D," 81:17-25) Plaintiffs have only provided testimony of Lefkowitz and Williams as to their observations during the Taser activation. Plaintiffs provided no supporting evidence to refute the testimony of Fliehr and Gagnebin as to how Desmond moved towards them with weapons in hand moments prior to the shooting. (Plaintiffs' Exhibit "D," 81:12-19). There is no supporting evidence provided by Plaintiffs which "belies" Fliehr and Gagnebin's testimony regarding Desmond's movements rushing toward Fliehr and Gagnebin.

Lastly, Plaintiffs stated that Sgts. Lefkowitz and Williams "did not see Desmond make any type of slashing movement or charge at the shooting officers." (Opposition, 14:21-23). After making this broad conclusion, Plaintiffs failed to provide supporting evidence.

## V. DEFENDANT OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY ON THE ADA CLAIM:

Plaintiffs misapprehend Defendants' argument in *City & County of San Francisco v. Sheehan*, 135 S.Ct. 1765 (2015) as it relates to the Supreme Court's holding that the officers in *Sheehan* were entitled to qualified immunity. 135 S. Ct. 1778.

Plaintiffs claim that Defendants' analysis "that *Sheehan II* applies qualified immunity to ADA claims is completely false" is not supported by the *Sheehan* decision. The Court in *Sheehan* did address the issue of whether the individually named officers were entitled to qualified immunity. The Court made an analysis as

8

to whether the officers' failure to accommodate *Sheehan's* illness violated clearly established law. The Court held that it did not and held that qualified immunity applied.

Moreover, Plaintiffs' Eighth Cause of Action entitled, "Title II of the Americans with Disabilities Act," names Officers Gagnebin, Fliehr and Cumber. In this cause of action, Plaintiffs allege that the conduct of Gagnebin, Fliehr and Cumber denied Plaintiffs' decedent the benefits of the ADA. (Complaint, 20:18-21).

Much like the analysis that Gagnebin, Fliehr and Cumber are entitled to qualified immunity in the use of force claim, the same conclusion applies here to the ADA claim. A reasonable officer would have understood that applying deadly force to on-rushing Desmond, with weapons in hand, was not unconstitutional. Plaintiffs' ADA claim should fail.

## VI.   PLAINTIFFS' STATE CLAIMS WARRANT DISMISSAL:

The moving and opposition papers make clear that the parties agree that the "objective reasonableness" standard applicable to Plaintiff's Fourth Amendment claim for excessive force applies equally to the state law claims for negligence, negligent infliction of emotional distress, and violation of the Bane Act. In addition to the fact that the force at issue in this case was objectively reasonable so as to defeat the federal claims, the reasonableness standard as applied to the state law claims must take into account state law immunities afforded to law enforcement in situations such as this. Under California law, the Penal Code privileges defeat liability for peace officer use of force under any tort theory, including negligence. "A privileged act is by definition one for which the actor is absolved of any tort liability, whether premised on the theory of negligence or intent." *See, e.g., Gilmore v. Superior Court* (1991) 230 Cal.App.3d 416, 421. Thus, "if, in a particular case, the facts establish a justifiable [use of force] under the Penal Code, there is no civil liability." *Id*. at p. 422; *accord Nakashima v. Takase* (1935) 8

Cal.App.2d 35, 38; *Brooks v. Sessagesimo* (1934) 139 Cal.App. 679, 679-81; *Horwich v. Superior Court (Acuna)* (1999) 21 Cal.4th 272, 285, citing *Gilmore, supra* ("when the defendant has been justified in the use of deadly force against the decedent, the privileged nature of the conduct is a defense to all civil liability.").

California law expressly provides that a peace officer who attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested; nor shall such officer be deemed an aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance. Cal. Pen. Code § 835a. Section 835a is directly on point and provides immunity to the Officers in connection with the state law claims.

Plaintiffs also attempt to establish negligence vis-à-vis the alleged pre-shooting conduct of the officers leading up to the use of deadly force. (Opposition, 21:15-20). In *Hayes v. County of San Diego*, 57 Cal.4th 622, 632 (2013), the California Supreme Court addressed the issue of whether law enforcement tactical conduct and decisions preceding the use of deadly force are factors which can give rise to negligence liability. In answering in the affirmative, the Court stated, however, that the tactical conduct and decisions must be viewed as part of the totality of the circumstances as well as whether the use of deadly force was unreasonable under those circumstances. The *Hayes* court emphasized the critical elements of the *Graham* standard, totality of the circumstances and the reasonableness of the use of deadly force. As argued above, the tactical plan was in place before entering the apartment. It was not the plan which gave rise to the use of deadly force, but the life threatening conduct of Desmond which gave rise to the degree of force. The *Hayes* negligence standard was not breached by the Defendant officers.

///

///

## VII. *MONELL* CLAIM FAILS TO ESTABLISH POLICY OF DELIBERATE INDIFFERENCE BY CITY:

The moving and opposition papers are also in agreement that a failure to train its employees may create Section 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employee] came in contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The salient factor is whether the training program is adequate and, if not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. Cnty Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006). Where the moving and opposition papers differ concerns Plaintiffs' failure to establish evidence that there was an official policy by the City of Chico which was the moving force for the violation.

Plaintiffs offered no evidence of the inadequacy of police training at the City of Chico. Plaintiffs simply point to the conduct of Defendant Officers stating (1) they knew of Desmond's mental illness, and (2) did not share this information, or use this information to inform their interaction with him. (Opposition, 9:17-19). Plaintiffs have the burden to establish that the deficiency in training caused the officers' indifference to the Plaintiffs' decedent's constitutional rights. One incident of knowing of the mental illness and not sharing this information does not give rise to a legal or factual showing of inadequate training which amounted to a municipal policy.

Plaintiffs chose not to provide their own separate statement of undisputed facts to establish that the failure to train reflected a deliberate or conscious choice by the City of Chico, or that the within action by these officers, were made pursuant to an official municipal policy which caused the constitutional violation. As such, Plaintiffs' *Monell* claim fails.

///
///
///

## VIII. PLAINTIFFS OFFER NO OPPOSITION TO REQUEST TO DISMISS THE SECOND CLAIM FOR DENIAL OF MEDICAL CARE:

Plaintiffs' Second Cause of Action for "42 U.S.C. § 1983, Survival Action, Denial of Medical Care," fails because Plaintiffs offer no opposition to the argument presented in the moving papers. In fact, it is undisputed that medical care was rendered to Plaintiffs' decedent. (UF## 79, 80, 81). As such, this claim should be dismissed.

## IX. PLAINTIFFS' STATE LAW CLAIMS DO NOT INCLUDE BATTERY:

Plaintiffs' Opposition contains an argument and points and authorities pertaining to an alleged state law battery claim. (Opposition, 20:21-26). Plaintiffs do not allege a battery claim or cause of action in their complaint. As such, it is respectfully requested that the Court disregard this argument.

## X. CONCLUSION:

For the foregoing reasons, the City of Chico and Chico Defendants respectfully request that the Court grant their Motion for Summary Judgment, or in the alternative, grant partial Summary Judgment as the Court deems appropriate.

Dated: July 23, 2019                ALVAREZ-GLASMAN & COLVIN

/s/ Roger A. Colvin, Esquire
Roger A. Colvin
Attorneys for Defendants
City of Chico, Jeremy Gagnebin, Alex Fliehr, and Jared Cumber

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court Eastern District of California by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/Maria Luisa Espinosa
Maria Luisa Espinosa

